CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Isabel Rose Masanque, Esq., SBN 292673
8033 Linda Vista Road, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
IsabelM@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Dwain Lammey**, <br><br> Plaintiff, <br><br> v. <br><br> **Bang Ja Kim,** in individual and representative capacity as Successor Trustee of the Mr. And Mrs Yong Bai Kim And Bang Ja Kin, Joint Revocable Living Trust; **O'Reilly Auto Enterprises, LLC,** a Delaware Limited Liability Company; and Does 1-10; <br><br> Defendants. | **Case:** 2:18-CV-09751-SJO-AGR <br><br> **Plaintiff's Motion For Summary Judgment** <br><br> Date: February 24, 2020 <br> Time: 10:00 a.m. <br> Ctrm: 10C (10th Floor) <br><br> Hon. Judge S. James Otero |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ i

TABLE OF AUTHORITIES ......................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ......................... 1

    I.   PRELIMINARY STATEMENT ...................................................... 1

    II.  RELEVANT FACTS ......................................................................... 1

    III. LEGAL STANDARD ....................................................................... 3

    IV. THE LACK OF ACCESSIBLE FACILITIES ............................. 4

       A.  Plaintiff is Disabled .................................................................. 6

       B.  Defendants Own and Operate a Place of Public Accommodation 6

       C.  The Store Had Barriers That Were Readily Removed ................. 7

V. THE LACK OF COMPLIANT FACILITIES IS UNLAWFUL UNDER CALIFORNIA LAW ............................................................... 8

    VI. REMEDIES ....................................................................................... 9

       A.  Plaintiff is Entitled to Injunctive Relief Under the ADA ............ 9

       B.  Plaintiff is Entitled to a Statutory Penalty Under the UCRA .... 10

    VII. CONCLUSION ................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*
603 F.3d 666 (9th Cir. 2010) ................................................................ 5

*Botosan v. Paul McNally Realty*, 216 F.3d 827, 833 (9th Cir. 2000) .... 11

*Chapman v. Pier 1 Imports (U.S.) Inc.*
631 F.3d 939 (9th Cir. 2011) ........................................................... 4, 7

*Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093,
1096 (9th Cir. 2017)............................................................................ 9

*Cullen v. Netflix, Inc.*,
880 F.Supp.2d 1017 (N.D. Cal. 2012) ................................................ 8

*D'Lil v. Best Western Encina Lodge & Suites*,
538 F.3d 1031 (9th Cir. 2008) ............................................................ 9

*Langer v. McHale*, 2014 WL 5422973, at *4 (S.D. Cal. 2014) ............. 11

*Lentini v. California Center for the Arts, Escondido*, 370 F.3d 837 (9th
Cir. 2004) .......................................................................................... 11

*Moeller v. Taco Bell Corp.*
816 F.Supp.2d 831 (N.D. Cal. 2011) .................................................. 5

*Molski v. M.J. Cable, Inc.*,
481 F.3d 724 (9th Cir. 2007) .............................................................. 9

*Rush v. Denco Enterprises, Inc.*
857 F. Supp. 2d 969 (C.D. Cal. 2012) ................................................ 7

**Statutes**

42 U.S.C. § 12102(2)(A) ........................................................................ 6
42 U.S.C. § 12188(a) .......................................................................... 6, 9
42 U.S.C. §§ 12183(a)(2) ................................................................... 5, 6

Cal. Civ. Code § 55.56(b) .......................................................................... 10

Cal. Civ. Code § 55.56(e) .......................................................................... 10

Civ. Code § 51 (f) ....................................................................................... 8

**Other Authorities**

28 C.F.R. § 36.304(b)(1)(3) ........................................................................ 8

Department of Justice, Technical Assistance Manual on the American
   with Disabilities Act (BNA) §§ III-4.4100 (1991) ................................ 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Plaintiff Dwain Lammey, a quadriplegic and a wheelchair user, has brought this action because Defendants Bang Ja Kim and O'Reilly Auto Enterprises, LLC ('Defendants') failed to provide accessible service counter at the O'Reilly Auto Parts ("Store") in violation of the Americans with Disabilities Act ("ADA"). In this motion, Plaintiff seeks an injunction under ADA against Defendants O'Reilly Auto Enterprises, LLC and Bang Ja Kim, the current owners of the Store and real property, requiring them to provide and maintain an accessible service counter at the Store. Plaintiff respectfully requests this Court grant his motion.

## II. RELEVANT FACTS

Dwain Lammey is a quadriplegic who cannot walk and who uses a wheelchair for mobility.[1] The O'Reilly Auto Parts ("Store") is located at or about 7224 S. Vermont Avenue, Los Angeles, California.[2] The Store is a business establishment and place of public accommodation.[3] Defendant O'Reilly Auto Enterprises, LLC is currently the owner and operator of the Store and was so in November 2018.[4] Defendant Bang Ja Kim is currently the owner of the property on which the Store is located and was so in November 2018.[5]

---

[1] SUF #1.
[2] SUF #2.
[3] SUF #3.
[4] SUF #4.
[5] SUF #5.

On November 8, 2018, Mr. Lammey went to the Store to order brake pedal covers.[6] When Mr. Lammey entered the Store, he saw that there were two sales and service counters—one counter where you request and order the parts you are looking for and one where you check out and pay. Mr. Lammey looked for the lowered portion of the service counter in the area of the store where you order your parts or what is sometimes called the "wheelchair counter." But there was no lowered counter or portion of this service counter.[7] Mr. Lammey is very familiar with lowered, wheelchair counters that are 36 inches high. He uses them all the time. The service counter where you order parts was much higher than the lowered, wheelchair counter that he needs and he could not find any lowered counter space in this area of the store.[8]

Having to handle his transactions on a higher counter creates difficulty and discomfort for Mr. Lammey. Handling his transactions at anywhere between 30 and 36 inches is ideal for him. As the height of the surface—where he places items, receives items, places his wallet, signs receipts—is raised, he experiences an increase in difficulty because he is now forced to handle those transactions at chest level or higher, forcing his arms higher. This is discomforting. And that was Mr. Lammey's experience here at the Store when he ordered brake pedal covers.[9]

On November 14, 2018, Evens Louis, an investigator for the plaintiff, conducted an investigation of the Store.[10] During his investigation, Mr. Louis found that there was a separate service counter

---

[6] SUF #6.
[7] SUF #7.
[8] SUF #8.
[9] SUF #9.
[10] SUF #10.

used for ordering auto parts.[11] Mr. Louis measured the height of the service counter to be approximately 42 inches high.[12] There was no lowered portion of the service counter for use by persons in wheelchairs.[13]

Mr. Lammey is currently deterred from visiting the Store because of his knowledge of the condition of the service counter.[14] Once there is a lowered service counter at the Store, he plans to visit the Store again to order auto parts whenever the need arises. The Store is located less than three miles away from Mr. Lammey's home; therefore, it is a convenient place for him to do so.[15] Additionally, Mr. Lammey is an active ADA litigator and will also return to the Store to assess compliance with disability access laws.[16]

### III. LEGAL STANDARD

Pursuant to section 56 of the Federal Rules of Civil Procedure, a party can bring a motion for summary judgment where there is no genuine dispute as to any material fact. Motions for summary judgment are not "disfavored."[17] In the present case, there can be no genuine dispute over the facts of the case and those facts inform the court and the parties that it would be a waste of judicial resources for this case to proceed to trial. There is no genuine issue of material fact and this court should grant the Plaintiff's motion.

---

[11] SUF #11.
[12] SUF #12.
[13] SUF #13.
[14] SUF #14.
[15] SUF #15.
[16] SUF #16.
[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## IV. THE LACK OF ACCESSIBLE FACILITIES

Under Title III of the Americans With Disabilities Act of 1990 ("ADA"), the general rule is that: "No individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."[18] The term "discrimination" can be misleading. The ADA applies not just to intentional discrimination but to thoughtlessness and indifference:

> Its passage was premised on Congress's finding that discrimination against the disabled is most often the product, not of invidious animus, but rather of thoughtlessness and indifference, of benign neglect, and of apathetic attitudes rather than affirmative animus. The concept of "discrimination" under the ADA does not extend only to obviously exclusionary conduct—such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a store's entrance. Rather, the ADA proscribes more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors— that interfere with disabled individuals' "full and equal enjoyment" of places of public accommodation. [19]

To succeed on his Title III, ADA claim, "a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant

---

[18] 42 U.S.C. § 12182(a).
[19] *Chapman v. Pier 1 Imports* (U.S.) Inc., 631 F.3d 939, 944-45 (9th Cir. 2011) (internal quotes and citations removed for readability).

is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability."[20] "The third element—whether plaintiffs were denied public accommodations on the basis of disability—is met if there was a violation of applicable accessibility standards."[21] This is because discrimination is defined both as either a failure to ensure that alterations are "readily accessible to and useable by persons with disabilities" and, where there are no alterations, "a failure to remove architectural barriers…in existing facilities…where such removal is readily achievable."[22] Thus, the following is a simplified statement of the elements necessary for the plaintiff to prove discrimination under this section:

1. Plaintiff must be disabled.[23]
2. The defendants' facility must be a place of "public accommodation" and, therefore, governed by Title III of the ADA *Id.*;
3. The defendants must be responsible parties, i.e., owners, operators, lessors or lessees. *Id.*;
4. The defendants' facility must have either undergone an alteration that did not comply with the access standards or contain an easily removed barrier that the defendants failed to remove.[24] Plaintiff

---

[20] *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).
[21] *Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 847 (N.D. Cal. 2011) citing, *Chapman*, 631 F.3d at 945.
[22] 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv).
[23] 42 U.S.C. § 12182(a);
[24] 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv);

must have actually encountered this non-removed and unlawful barrier.[25]

As discussed below, Mr. Lammey's civil rights were violated because the Defendants failed to provide accessible facilities at the Store. Plaintiff will discuss each element, seriatim.

### A. Plaintiff is Disabled

Mr. Lammey has severe mobility impairments. He cannot walk and he uses a wheelchair for mobility.[26] Thus, there can be little doubt that he fits the qualification under the Americans with Disabilities Act as a person with a disability.[27] Given Mr. Lammey's inability to walk, this is not a genuine issue.

### B. Defendants Own and Operate a Place of Public Accommodation

The O'Reilly Auto Parts store is a public accommodation, which Defendants admit.[28] Additionally, retails establishments are specifically identified as places of public accommodation.[29] Defendant O'Reilly Auto Enterprises, LLC is currently the owner and operator of the Store and was so in November 2018.[30] Defendant Bang Ja Kim is currently the owner of the property on which the Store is located and was so in November 2018.[31] The Defendants, therefore, have an obligation to

---

[25] 42 U.S.C. § 12188(a).
[26] SUF #1.
[27] 42 U.S.C. § 12102(2)(A) (defining a physical impairment substantially affecting a major life activity as qualifying as a disability).
[28] SUF #3; Answer of Defendants (ECF No. 11), ¶ 11.
[29] See 42 U.S.C. § 12181(7)(E).
[30] SUF #4; Answer of Defendants (ECF No. 11), ¶¶ 4 & 5.
[31] SUF #5.

comply with the anti-discrimination provisions of Title III of the Americans with Disabilities Act.

### C. The Store Had Barriers That Were Readily Removed

The ADA defines "discrimination" as a failure to remove architectural barriers where it is readily achievable to do so. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "barrier" is not defined in the Act itself but is defined in the Technical Assistance Manual:

> III-4.4100: What is an architectural barrier? Architectural barriers are physical elements of a facility that impede access by people with disabilities. These barriers include more than obvious impediments such as steps and curbs that prevent access by people who use wheelchairs.[32]

Case law is more specific. "To determine if Plaintiff describes an 'architectural barrier' the Court must turn to the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"). If an element does not meet or exceed ADAAG standards, it is considered a barrier to access."[33] "Any element in a facility that does not meet or exceed the requirements set forth in the ADAAG is a barrier to access." (identifying this as the formal position of the Department of Justice).[34] These are "objective" and "precise" standards and "the difference between compliance and noncompliance" is "often a matter of inches."[35]

---

[32] Department of Justice, Technical Assistance Manual on the American with Disabilities Act (BNA) §§ III-4.4100 (1991).
[33] *Rush v. Denco Enterprises, Inc.*, 857 F. Supp. 2d 969, 973 (C.D. Cal. 2012) (internal cites omitted).
[34] *Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 945 (9th Cir. 2011)
[35] *Id.*

### 1. *Lack of accessible service counter*

Under the 2010 Standards, where the approach to a sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width that extends the same depth as the rest of the sales or service counter top.[36] Additionally, the 2010 Standards require that "[w]here provided, at least one of each type of sales counter and service counter shall comply with 904.4."[37]

Here, there is a service counter at the Store that is used to order parts and a sales counter that is used for customers to check-out and pay for their items.[38] On the date of Mr. Lammey's visit, he found that there was no lowered portion of the parts counter available for him to use.[39] During his subsequent investigation, Mr. Louis confirmed that the parts counter measured 42 inches high.[40] Because there are two types of counters offered at the Store, one of each must be accessible. Thus, Defendants' failure to provide a lowered service counter for ordering parts is a violation of the ADA.

## V. THE LACK OF COMPLIANT FACILITIES IS UNLAWFUL UNDER CALIFORNIA LAW

The Unruh Civil Rights Act provides that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section." Civ. Code § 51 (f). "A violation of the ADA is, by statutory definition, a violation of both the

---

[36] 28 C.F.R., Part 1191, Appendix D § 904.4 & 904.4.1.
[37] 28 C.F.R., Part 1191, Appendix B § 227.3.
[38] SUF #7-9, 11.
[39] SUF #7-9.
[40] SUF #11.

Unruh Act and the DPA."[41] "Because the Unruh Act is coextensive with the ADA and allows for monetary damages, litigants in federal court in California often pair state Unruh Act claims with federal ADA claims."[42]

As discussed above under section "IV", defendants violated the ADA. Thus, there has been a per-se violation of Unruh.

## VI. REMEDIES

Because Defendants violated the ADA and the Unruh Civil Rights Act, Plaintiff is entitled to seek injunctive relief and a statutory penalty.

### A. Plaintiff is Entitled to Injunctive Relief Under the ADA

Under the ADA, the plaintiff is entitled to injunctive relief.[43] Such injunctive relief "shall include an order to alter facilities to make such facilities readily accessible to and useable by individuals with disabilities" to the extent required by the ADA.[44] "We have found actual or imminent injury sufficient to establish standing where a plaintiff demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible."[45] Additionally, in *Civ. Rights Educ.,* the Ninth Circuit has held that ADA plaintiffs have "tester" standing, finding that "as a matter of first impression, a plaintiff suing under Title III of the ADA can claim tester standing; plaintiffs' status as testers, rather than bona fide hotel patrons, [does] not deprive them of standing."[46]

---

[41] *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D. Cal. 2012).
[42] *Molski*, 481 F.3d at 731.
[43] 42 U.S.C. § 12188(a).
[44] *Id*. at 12188(a)(2).
[45] *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008).
[46] *Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.,* 867 F.3d 1093, 1096 (9th Cir. 2017).

Here, Mr. Lammey has standing to seek injunctive relief with respect to the inaccessible service counter at the Store, which he personally encountered. Mr. Lammey lives less than three miles away from the Store and has stated his intention to return to the Store once the barriers are removed to shop for auto parts whenever the need arises, as well as to assess the store for compliance with access laws.[47]

### B. Plaintiff is Entitled to a Statutory Penalty Under the UCRA

Statutory damages can be recovered for a violation of the Unruh Civil Rights Act "if the violation denied the plaintiff full and equal access to the place of public accommodation on a particular occasion." A denial of full and equal access takes place where a plaintiff "personally encountered" the violation and it resulted in "difficulty, discomfort or embarrassment."[48] Under the Civil Code, the plaintiff is entitled to recover a statutory penalty for "each offense" (Cal. Civ. Code § 52(a)) which has been defined as "each particular occasion that the plaintiff was denied full and equal access…"[49] Here, Mr. Lammey personally encountered the access standards violations during his visit on November 8, 2018 and they caused him difficulty and discomfort.[50]

Moreover, the Unruh Civil Rights Act provides that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section."[51] Under the ADA, the non-discrimination mandate applies to anyone who "owns, leases (or

---

[47] SUF # 15, 16.
[48] Cal. Civ. § 55.56(b).
[49] Cal. Civ. Code § 55.56(e).
[50] SUF #6-9.
[51] *See* Cal. Civ. Code § 51(f).

leases to), or operates a place of public accommodation."[52] The Code of Federal Regulations implementing Title III of the ADA states: "*Both* the landlord who owns the building . . . and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part."[53] As is often the case, the Technical Assistance Manual reduces this to plain language: "*Both* the landlord and the tenant are public accommodations and have *full responsibility* for complying with all ADA title III requirements . . . any allocation made in a lease or other contract is only effective as between the parties, and *both landlord and tenant remain fully liable* for compliance with all provisions of the ADA relating to that place of public accommodation."[54] And the Ninth Circuit has confirmed this understanding, adding the comment that: "The legislative history confirms that a landlord has an *independent* obligation to comply with the ADA . . . ."[55] In fact, because these statutory damages are penalties—and not compensatory—standard damages doctrines, such as mitigation, have no applicability.[56] In the present case, the plaintiff is seeking to have a penalty assessed against each of the responsible parties, i.e., the property owners (Defendant Kim) and the business operator (Defendant O'Reilly Auto Enterprises, LLC).

The Ninth Circuit had the opportunity to review a district court's assessment of penalties against multiple parties in *Lentini v. California*

---

[52] *See* 42 U.S.C. § 12182(a).
[53] 28 C.F.R. § 36.201(b)(emphasis added).
[54] U.S. Dept. of Justice, Civil Rights Division, the American with Disabilities Act: Title III Technical Assistance Manual § 1.2000 (1993) (emphasis added).
[55] *Botosan v. Paul McNally Realty*, 216 F.3d 827, 833 (9th Cir. 2000) (emphasis added).
[56] *Langer v. McHale*, 2014 WL 5422973, at *4 (S.D. Cal. 2014).

*Center for the Arts*.[57] In *Lentini*, the disabled plaintiff had a small, black Shih Tzu/Poodle mix named Jazz that functioned as a service animal and that was denied entrance to the theater.[58] Invoking the ADA and Unruh Civil Rights Act, Lentini named three defendants: (1) the Center; (2) Alan Corbin, the House Manager, and (3) Randall Vogel, the Director of Center Sales and Event Services.[59] Following a bench trial, the late Honorable Napoleon Jones found *joint and several and individual* liability and assessed penalties against all three defendants for the discriminatory treatment of Lentini.[60] On appeal, the Ninth Circuit upheld the award, noting that "both Corbin and Vogel [were] liable under the ADA as 'operators' of a place of public accommodation."[61]

Thus, a civil penalty can be assessed against each law-breaking defendant. Both the property owners (Defendant Kim) and the business operator (Defendant O'Reilly Auto Enterprises, LLC) had *independent* obligations to comply with the ADA and *neither* fulfilled those obligations. Both entities were responsible and both failed to honor their respective obligations. The statutory scheme is clear. Recovery of penalties against each does not constitute double recovery because these are not compensatory damages. These are statutory penalties and properly assessed against each, regardless of the fact that the other has also been penalized for its misconduct.

//

---

[57] *Lentini v. California Center for the Arts, Escondido*, 370 F.3d 837 (9th Cir. 2004).
[58] *Id.* at 839-40.
[59] *Id.* at 841.
[60] *Id.* at 842-43.
[61] *Id.* at 849.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant his motion.

Dated: January 20, 2020             CENTER FOR DISABILITY ACCESS

By: */s/ Isabel Rose Masanque*
Isabel Rose Masanque
Attorneys for Plaintiff